UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| J.B., a minor by and through his Next Friend Ricky Bullock, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Cause No.  4:16-cv-01394-ERW ) |
| MISSOURI BAPTIST HOSPITAL of SULLIVAN, et al., | ) ) ) ) |
| Defendants. | ) |

**DEFENDANT MISSOURI BAPTIST HOSPITAL OF SULLIVAN'S MOTION *IN LIMINE* TO PRECLUDE PLAINTIFF'S USE OF "REPTILE THEORY" ARGUMENT OR EVIDENCE AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

COMES NOW Defendant Missouri Baptist Hospital of Sullivan ("MBHS"), by and through counsel, Williams Venker & Sanders LLC, and moves *in limine* for an Order precluding Plaintiff from introducing argument or evidence related to the "Reptile Theory" at trial.  MBHS states as follows in further support of this Motion.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION**

The "Reptile Theory" impermissibly attempts to redefine the standard of care in a medical malpractice case through blind adherence to "safety rules" and community standards. Such arguments or tactics have no place in any trial, and any argument by Plaintiff's counsel suggesting application of a community standard of care or a general safety standard—as opposed to the standard of care established through expert testimony presented at trial—should be precluded.

### A. The "Reptile Theory."

The "Reptile Theory" litigation strategy is based on a book titled *Reptile: The 2009 Manual of the Plaintiff's Revolution*, 45 (1st ed. 2009). The underlying thesis is that the jury has the power to improve the safety of themselves, their family members, and their community by rendering a verdict that will reduce or eliminate allegedly "dangerous" or "unsafe" conduct. *Id.* at 45.

In *Reptile,* the authors posit that jurors have brains divided into three sections; one of which is the "reptilian brain," which includes the brain stem, cerebellum, and controls basic life functions such as breathing, hunger, and survival. According to *Reptile*, the "reptilian brain" overpowers the cognitive and emotional parts of the brain when those life functions become threatened. *Id*. at 45. The authors suggest that reducing danger in the community facilitates survival, which awakens the reptilian part of the brain in each juror and overcomes logic or emotion. *Id.*

*Reptile* instructs lawyers to appeal to the jurors' own sense of self-protection in order to persuade and prevail. According to the book, an appeal to a juror's self-protective interests is more persuasive than other arguments because the most powerful thinking occurs when one is protecting one's life. Thus, a lawyer communicates most effectively by converting every issue into one of self-protection or community safety to utilize "powerful Reptilian imperative and devastating events" as a springboard from which to position the jurors as the cultivators and guardians of safety. *Id.* at 86. By linking arguments to a juror's sense of personal or community safety, the lawyer provides a compelling, but impermissible, basis for finding for the plaintiff despite the law or evidence submitted at trial.

*Reptile* devotes an entire chapter to the use of the theory in the context of medical malpractices cases. The book instructs attorneys to establish an "umbrella rule," which is the

2

widest general rule violated by the defendant and one to which every juror can relate. *Id*. at 55. After the "umbrella rule" has been established, the next step is to create case-specific rules directly applicable to the conduct attributed to a defendant. *Id.* at 58. Common "Reptile Theory" questions to achieve these steps include:

      1.    It is a safety rule to protect patients' interests, true?

      2.    Violations of safety rules by physicians can hurt anybody, true?

      3.    They can be hurt seriously, true?

      4.    They can even be killed or brain-damaged, true?

      5.    If a safety rule is broken and a patient is harmed thereby, do you believe the rule breaker should be held responsible for the harm that was caused?

### B. The "Reptile Theory" Misstates the Appropriate Standard of Care in a Medical Malpractice Case.

The required standard of care in a medical malpractice action is "that degree of skill and learning ordinarily used under the same or similar circumstances by members of the defendant's profession." *Hickman v. Branson Ear Nose & Throat, Inc.*, 256 S.W.3d 120, 121 (Mo. banc 2008) (quoting MAI 11.06). A misstatement of the standard of care presents grounds for a new trial. *See e.g., Abbot v. Missouri Gas Energy*, 375 S.W.3d 104, 107 (Mo. App. W.D. 2012).

The standard of care in a medical malpractice action does not consider safety as a factor. However, a case litigated according to the "Reptile Theory" makes safety the *only* factor: "When there are two or more ways to achieve exactly the same result, the Reptile allows—demands!— only one level of care: the safest . . . The second-safest choice, no matter how many 'experts' say it's okay, always violates the legal standard of care." *Reptile*, at 62. Such a standard subjects providers to liability for all but the safest treatment options, and it attempts to turn medical malpractice negligence cases into strict liability cases. This is improper under Missouri law. *See*

3

*Budding v. SSM Healthcare Sys.*, 19 S.W.3d 678, 681-82 (Mo. banc 2000) ("the general assembly intended that liability of health care providers be rooted in a culpable state of mind that gives rise to traditional tort liability and not in strict liability); *see also Ladish v. Gordon*, 879 S.W.2d 623, 630 (Mo.App. W.D. 1994) ("a medical doctor is entitled to a wide range of discretion in the exercise of judgment and a doctor will not be found negligent unless it be shown that the course pursued was clearly against the course recognized as correct by the profession generally.")

The safety rules and community standards comprising the "Reptile Theory" are blatant misstatements of the standard of care in medical malpractice actions in Missouri. Plaintiff should be precluded from presenting any "Reptile Theory" argument or evidence at trial, including, but not limited to, testimony or argument relating to the safest possible option or generalized concepts of safety.

### C. The "Reptile Theory" Presents a Modified Version of the "Golden Rule" Argument.

"A 'golden rule' argument, which [courts] do not distinguish from 'improper personalization,' occurs when counsel personalizes the case to the jurors by asking them to place themselves in the position of a party to the action." *Warren Davis Properties V, L.L.C. v. United Fire & Casualty Co*, 111 S.W.3d 515, 527 (Mo.App. S.D. 2003). Under Missouri law, golden rule arguments and other improper personalization are not permitted and may constitute reversible error. *See Merrit v. Wilkerson*, 360 S.W.2d 283, 287-88 (Mo.App. 1962); *see also Jones v. State*, 389 S.W.3d 253, 257 (Mo.App. E.D. 2012) ("improper personalization occurs when [a party] implies that a defendant poses a personal danger to the jurors or their families"). A so-called "golden rule" argument which asks the jurors to place themselves in the position of a party "is universally condemned because it encourages the jury to 'depart from neutrality and to

decide the case on the basis of personal interest and bias rather than on the evidence.' " *Lovett ex rel. Lovett v. Union Pac. R.R. Co.*, 201 F.3d 1074, 1083 (8th Cir. 2000) (*quoting Spray-Rite Serv. Corp. v. Monsanto Co.*, 684 F.2d 1226, 1246 (7th Cir. 1982)).

The "Reptile Theory" presents a modified version of the golden rule argument in that the ultimate goal of implementing the strategy is to obtain a verdict that a jury believes will be the safest decision for the *community*, including each individual juror. *See Reptile*, at 17, 19, and 73 ("[m]ajor axiom: when the *Reptile* sees a survival danger, even a small one, she protects her genes by impelling the juror to *protect himself and the community*") (emphasis added). Thus, the use of "Reptile Theory" arguments or evidence should likewise be precluded.

MBHS requests the Court prohibit testimony or argument relating to the "safest possible option," generalized concepts of safety, and other principles stemming from the "Reptile Theory." Such testimony misstates the standard of care in medical malpractice suits and effectively converts the lawsuit into one of strict liability.

WHEREFORE, Defendant Missouri Baptist Hospital of Sullivan respectfully requests the Court enter an Order prohibiting testimony or argument relating to the safest possible option, generalized concepts of safety, and other principles stemming from the "Reptile Theory."

**Court Ruling:**  Granted _____   Denied _____   Under Advisement _____

                WILLIAMS VENKER & SANDERS LLC


By   /s/ John F. Mahon, Jr.
       John F. Mahon, Jr., #56691
       Scott M. Gershenson, #64865
       100 North Broadway, 21st Floor
       St. Louis, Missouri 63102
       (314) 345-5000
       (314) 345-5055 Fax
       jmahon@wvslaw.com
       sgershenson@wvs.law.com

ATTORNEYS FOR DEFENDANT
MISSOURI BAPTIST HOSPITAL OF
SULLIVAN

## CERTIFICATE OF SERVICE

      I hereby certify that on the 29th day of January, 2018, I electronically filed the foregoing with the CM/ECF electronic filing system, which sent notification of such filing to all counsel of record.  I further certify that I signed, or caused my electronic signature to be placed upon, the original of the foregoing document.

| | |
|---|---|
| Myron S. Zwibelman #21522<br>Walter/Zwibelman Law Associates<br>230 S. Bemiston Ave., Ste. 1401<br>St. Louis, MO 63105<br>314-725-9595<br>888-851-4940 (Fax)<br>mzwib@wzlawassociates.com<br><br>Todd R. Nissenholtz,#55049<br>Jonathan D. Valentino, #56166<br>Cofman Townsley LLP<br>200 S. Hanley Road, Suite 1070<br>St. Louis, MO 63105<br>314-621-2005<br>314-621-3118 (Fax)<br>tn@cofmantownsley.com<br>jvalentino@cofmantownsley.com<br><br>***Attorneys for Plaintiff*** | Terese A. Drew #32030<br>Josephine P. Abshier #56708<br>Hinshaw & Culbertson LLP<br>701 Market St., Suite 1375<br>St. Louis, MO 63101<br>P-314-241-2600<br>F-314-241-7428<br>tdrew@hinshawlaw.com<br>jabshier@hinshawlaw.com<br><br>***Attorneys for BC Missouri Emergency Physicians, LLP and Shamim X. Amini, M.D.*** |

                                          /s/ John F. Mahon, Jr.